UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 JUL 20  PM 4: 12

CLERK

BY ___/s/___
DEPUTY CLERK

| | |
|---|---|
| GREGORY BUNCE, individually and as Personal Representative of the Estate of Peter D. Bunce, and EVELYN BUNCE,<br><br>Plaintiffs,<br><br>v.<br><br>REBECCA POST and POST INSURANCE & FINANCIAL, INC.,<br><br>Defendants. | Case No. 22-cv-0199 |

**OPINION AND ORDER GRANTING DEFENDANT POST INSURANCE'S MOTION TO DISMISS**
(Doc. 11)

Plaintiffs Gregory and Evelyn Bunce bring this action against Defendants Rebecca Post and Post Insurance & Financial, Inc. ("Post Insurance") alleging negligence (Count I); negligent possession and storage of a loaded firearm (Count II); premises liability (Count III); and negligent infliction of emotional distress (Count IV) as to both Defendants, as well as negligent failure to warn as to Ms. Post (Count V) and negligent supervision as to Post Insurance (Count VI). Plaintiffs seek compensatory and punitive damages (Count VII) arising out of the death of their son, Peter D. Bunce, on June 26, 2021 from a gunshot wound after he discovered and fired a loaded handgun in or around Ms. Post's bedside table. Pending before the court is Post Insurance's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**I.   Procedural Background.**

Plaintiffs filed their Complaint on October 31, 2022. (Doc. 1.) Post Insurance answered on November 18, 2022 (Doc. 4), and Ms. Post answered on February 15, 2023 (Doc. 12). On January 20, 2023, Post Insurance moved to dismiss. (Doc. 11.) Plaintiffs opposed that motion on February 16, 2023 (Doc. 13), and Post Insurance replied on

February 27, 2023 (Doc. 15), at which point the court took this matter under advisement. On February 17, 2023, Plaintiffs moved to amend their opposition (Doc. 14), which the court granted on March 16, 2023. (Doc. 18.) Plaintiffs filed their amended opposition that same day. (Doc. 19.)

Plaintiffs are represented by Mark V. Franco, Esq. Defendant Rebecca Post is represented by Michael J. Gannon, Esq., and Defendant Post Insurance is represented by Susan J. Flynn, Esq.

## II.   Allegations in the Complaint.

At the time relevant to the Complaint, Plaintiffs and their deceased minor child, Peter Bunce, resided in Saco, Maine. Mr. Bunce brings this action with his wife, individually, as well as in his capacity as the personal representative of his son's estate.

Ms. Post resides in a two-story, single family home she owns in Barre, Vermont and resided there during the events alleged in the Complaint. Post Insurance is a Florida corporation with a principal place of business in Fort Lucie, Florida. Ms. Post is an employee of Post Insurance, which her father founded and which her family owns and operates. Ms. Post manages the business with her sister. At the time of Peter's death, Ms. Post had been dating Mr. Bunce's brother, Kenneth Bunce ("K. Bunce") for several years.

At all relevant times, Ms. Post kept a Glock 9mm pistol and a Taurus .380 caliber pistol in her bedroom "in soft, unlocked cases in or around her bedside table." (Doc. 1 at 2, ¶ 9-10) Plaintiffs allege that Ms. Post "knew that the pistols were there, that they were loaded, and that they were not secured by locks or other safety devices." *Id.* at ¶ 11.

Ms. Post used an unspecified part of her residence as a home office in the course of her work for Post Insurance, "with Post Insurance's knowledge, consent[,] and encouragement." *Id.* at ¶ 13. Post Insurance allegedly "knew that [Ms. Post] kept loaded firearms in the house" in part "to protect her home office, on Post Insurance's behalf." *Id.* at 3, ¶¶ 15-16. Plaintiffs allege that Post Insurance "knew or should have known that third parties would go to [Ms. Post's] home office to transact business, [ ] that children might accompany them[,]" and that Ms. Post "could not ensure that children accompanying

2

visitors to her home office would be watched over or controlled at all times." *Id.* at ¶¶ 17-18. Post Insurance allegedly did not take steps to supervise Ms. Post's storage of her firearms.

On June 25, 2021, Mr. Bunce and his children, Peter and his sister, Ellie, age seven, visited Ms. Post and K. Bunce at Ms. Post's home in Barre. That night, Mr. Bunce, Peter, and Ellie slept in an upstairs guest room while K. Bunce and Ms. Post slept in her upstairs bedroom. Plaintiffs allege that Ms. Post did not take steps to secure the two loaded pistols in her bedroom despite Peter and Ellie's presence. Ms. Post allegedly never informed Mr. Bunce of the presence of firearms in her home. He allegedly neither knew there were firearms in the home, nor had any reason to believe there would be loaded, unsecured firearms there. Had Mr. Bunce known, "he would have taken steps to ensure that the firearms were safely stored." *Id.* at 4, ¶ 27.

On the morning of June 26, 2021, Ms. Post and Ellie left the house to go shopping while Mr. Bunce, K. Bunce, and Peter prepared to visit K. Bunce's home. At approximately 10:00 a.m., "Peter found the pistols in [Ms. Post's] bedside table and accidentally discharged the Glock pistol at his head. The gunshot resulted in Peter's death." (Doc. 1 at 4, ¶ 31.) Mr. Bunce was downstairs when he heard the gunshot and a thud upstairs, "placing him in immediate fear for his own life." *Id.* at ¶ 32.

Plaintiffs allege that they "have suffered tremendous pain from the sudden and horrific death of their young son." *Id.* at ¶ 33. They "have experienced severe emotional and mental distress, including distress and trauma from the loss of love and companionship and the destruction of the parent-child relationship, as well as the circumstances of Peter's death." *Id.* at ¶ 34.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient

facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not judge credibility, "weigh the evidence[,]" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

**B.  Whether Plaintiffs Plausibly Allege Claims Against Post Insurance.**

Post Insurance seeks dismissal of the claims against it, asserting it "does not belong in this case" (Doc. 11-1 at 2) because there is no duty in Vermont to "to control the acts of another to protect a third party" absent a "special relationship." *Id.* at 5 (internal quotation marks omitted). It points out that at the time of Peter's death, Ms. Post was off duty, was not carrying out actions on Post Insurance's behalf, and was not serving its clients at the time of the incident. Instead, Plaintiffs were visiting Ms. Post on a purely social basis, the tragedy took place in her bedroom, and there was no business purpose to the children's presence in her home or the presence of loaded firearms in her bedroom. As Post Insurance points out, allegations that Ms. Post maintained loaded firearms in her bedroom with its knowledge and on its behalf are bereft of any supporting facts.

4

Plaintiffs counter that the Complaint plausibly alleges Post Insurance's vicarious liability for negligence (Count I), negligent possession and storage of a loaded firearm (Count II), and negligent infliction of emotional distress (Count IV)[1] because Ms. Post's allegedly tortious acts occurred within the scope of her employment. Plaintiffs additionally assert that the Complaint plausibly alleges Post Insurance's direct premises liability (Count III) and negligent supervision (Count VI) claims.

Employers are generally "liable for their employees' acts only when the employees were acting within the scope of their employment." *Poplaski v. Lamphere*, 565 A.2d 1326, 1330 (Vt. 1989). This includes an employee's acts committed "incidental to[] the scope of employment." *Kuligoski v. Rapoza*, 2018 VT 14, ¶ 13, 207 Vt. 43, 49, 183 A.3d 1145, 1150 (internal quotation marks omitted) (quoting *Brueckner v. Norwich Univ.*, 730 A.2d 1086, 1090 (Vt. 1999)). An employee's conduct is within the scope of their employment if:

> (a) it is of the kind the servant is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) in a case in which the force is intentionally used by the servant against another, it is not unexpectable by the master.

*Brueckner*, 730 A.2d at 1091 (citing Restatement (Second) Agency § 228(1)). Conduct must "be of the same general nature as, or incidental to, the authorized conduct" in order to be within the scope of employment. *Id.* (citing Restatement (Second) Agency § 229(1)).

An employee's conduct is not within the scope of employment if "it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master." *Id.* (citing Restatement (Second) Agency

---

[1] Under Vermont law, negligent infliction of emotional distress requires a plaintiff to be "within the zone of danger[.]" *Vincent v. DeVries*, 2013 VT 34, ¶ 12 n.2, 193 Vt. 574, 580, 72 A.3d 886, 891 ("In order to recover for NIED, a plaintiff who has not suffered a physical impact must show that the plaintiff '(1) . . . was within the "zone of danger" of an act negligently directed at [plaintiff] by defendant[.]'") (quoting *Brueckner v. Norwich Univ.*, 730 A.3d 1086, 1092 (Vt. 1999) (alterations in original). The Complaint alleges that Gregory Bunce was "downstairs" when the tragedy occurred. (Doc. 1 at 4, ¶ 32.)

5

§ 228(2)). "[T]he inquiry turns not on whether the act done was authorized or was in violation of the employer's policies, but rather whether the acts can properly be seen as intending to advance the employer's interests." *Sweet v. Roy*, 801 A.2d 694, 704 (Vt. 2002) (quoting *McHugh v. Univ. of Vt.*, 758 F. Supp. 945, 951 (D. Vt. 1991)) (internal quotation marks omitted). The master need not "specifically authorize the precise action the servant took." *Id.*

Whether an act "is committed within the scope of employment is properly determined by the finder of fact after consideration of the attendant facts and circumstances of the particular case." *Brueckner*, 730 A.2d at 1091; *see also Gorman v. Thamann*, 2005 WL 1389953, at *4 (D. Vt. June 10, 2005) ("Whether the conduct in question is within the scope of employment is generally a question for the finder of fact, as it is a fact intensive inquiry."); *accord Doe v. Newbury Bible Church*, 2005 WL 1862118, at *2 (D. Vt. July 20, 2005). However, in this case, the determination need not await fact-finding because the Complaint contains only two conclusory allegations to support a claim that Ms. Post kept loaded firearms in her bedroom with Post Insurance's knowledge and on its behalf. The Complaint does not allege where Ms. Post's home office was located, whether she saw clients with their children there, or how Post Insurance's interests would be protected by her having loaded firearms in her bedroom. Without more, it is implausible that she was acting in the scope of her employment or that there was a business purpose for her maintaining loaded, unsecured firearms at her bedside during a social visit with friends.

If an employee is not acting within the scope of her employment, an employer may still have "a duty to exercise reasonable care so to control his servant . . . as to prevent [her] from intentionally harming others or from so conducting [her]self as to create an unreasonable risk of bodily harm to them, if" certain conditions are met. Restatement (Second) of Torts § 317. These conditions include if the servant "is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or . . . is using a chattel of the master," and if the master "knows or has reason to know that he has the ability to control his servant, and . . . knows or should

6

know of the necessity and opportunity for exercising such control." *Id.*; *see also Gorman*, 2005 WL 1389953, at *2 (explaining that while "[t]here is generally 'no duty to control the conduct of a third person as to prevent [her] from causing physical harm to another[,]'" an exception exists when a special relationship between the actor and a third person "imposes a duty upon the actor to control the third person's conduct"); *Poplaski*, 565 A.2d at 1330 ("Employers have traditionally been liable for their employees' acts only when the employees were acting within the scope of their employment. . . . One exception to this rule is where an off-duty employee's negligent acts occurred on the master's premises or while using his chattels.") (citing Restatement (Second) of Torts § 317).

Post Insurance seeks dismissal pursuant to § 317 of the Restatement (Second) of Torts because there is no special relationship that would impose a legal duty on it to control Ms. Post while she acted outside the scope of her employment and entertained social guests in her own home. In their Complaint, Plaintiffs contend that Ms. Post uses her residence as a home office for Post Insurance with her employer's knowledge, consent, and encouragement. Plaintiffs further allege that Ms. Post kept firearms in her home "in part to protect her home office, on Post Insurance's behalf[,]" and Post Insurance allegedly "knew that [Ms. Post] kept the firearms in part to protect her home office . . . on [its] behalf." (Doc. 1 at 2-3, ¶¶ 13-16.) Plaintiffs argue that Ms. Post "was not a transient or arm's-length employee of [Post Insurance][] who punched in and out when she entered and exited her home office," (Doc. 19 at 9), but a supervisory employee in a family-owned and operated company.

Although Plaintiffs allege a business purpose in this case, they do so with conclusory allegations unsupported by facts. The fact that Ms. Post maintained a home office does not convert her bedroom into Post Insurance's business premises. Plaintiffs do not allege a special relationship and there is no allegation that any of Post Insurance's clients ever visited Ms. Post's bedroom. At this juncture, it thus remains implausible that Ms. Post possessed loaded, unsecured firearms during a social visit in her own personal living quarters for Post Insurance's benefit, or that Post Insurance maintained control

7

over her off-duty activities involving firearms. *See D.C. v. Hasratian*, 304 F. Supp. 3d 1132, 1139-40 (D. Utah 2016) (finding that a restaurant employee's sexual assault of a minor in the employee's home office was not "the general kind" the employee was authorized to perform).

In opposition, Plaintiffs argue that discovery may reveal a basis for their claim. *See* Doc. 13 at 10 (stating "[i]t is also reasonable to think that a business's co-owner and manager might secure that work-related property by, among other things, arming herself. Perhaps the evidence will show that [Ms. Post] did not have such an intention; perhaps it will show that she did."). They further speculate regarding whether Post Insurance claimed a tax deduction on Ms. Post's home office, maintained insurance coverage for her work materials and paid her premiums, or whether Post Insurance's "other principals" could have gone "shooting with her or otherwise discuss[ed] gun use[.]" *Id.* Not only are these allegations not contained in the Complaint, Plaintiffs themselves admit they are purely hypothetical. Nothing precludes Plaintiffs from conducting discovery to answer these questions, but they cannot assert claims against a party without a good-faith factual and legal basis for doing so based on a hope that discovery will supply one.

Finally, there is no allegation in the Complaint that Post Insurance controlled the contents of Ms. Post's bedroom as required to establish premises liability. *See Garafano v. Neshobe Beach Club, Inc.*, 238 A.2d 70, 77 (Vt. 1967) ("The liability of an owner or occupant of real estate in reference to injuries caused by a dangerous or defective condition of the premises depends in general upon his having control of the property. In fact, such liability depends upon control, rather than ownership, of the premises."). Plaintiffs argue that "[t]he facts alleged in the Complaint are simply insufficient to determine whether [Ms. Post] kept the guns exclusively in the bedroom or the office or transferred them between the two rooms (and Post Insurance's role in her decision-making on that point)[.]" (Doc. 13 at 14-15.) That is a deficiency in the Complaint, not a reason to allow the claim to go forward. Plaintiffs' premises liability claim thus also remains implausible.

## CONCLUSION

Because Plaintiffs fail to plausibly allege that Ms. Post's storing of loaded, unsecured firearms in her bedroom was conduct within the scope of her employment with Post Insurance, or that any "special relationship" exists between Post Insurance and Ms. Post pursuant to the Restatement (Second) of Torts § 317, Post Insurance's motion to dismiss (Doc. 11) is GRANTED. Plaintiffs may seek leave to amend their Complaint either immediately or after conducting discovery.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 20th day of July, 2023.

Christina Reiss, District Judge
United States District Court